**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DOROTHY ANN HOPKINS,

                Plaintiff,

vs.                                                 Case No. 3:08-cv-828-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Dorothy Ann Hopkins ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits. Her alleged inability to work is based on physical impairments of hypertension, coronary artery disease, gastroesophageal reflux disease, fibromylagia, noninsulin-dependent diabetes mellitus, ulnar nerve neuropathy, mild degenerative joint disease of the cervical and lumber spine, and headaches. See Transcript of Administrative Proceedings ("Tr.") at 101-02; Memorandum in Support of Complaint (Doc. No. 11; "Pl.'s Mem.") at 2-3. In addition, Plaintiff alleges she suffers from the mental impairments of depression and sleep disturbance. Tr. at 102; Pl.'s Mem. at 3. On March 8, 2005, Plaintiff filed an application for disability insurance benefits, alleging an onset date of November 1, 2004. Tr. at 90. An Administrative Law Judge ("ALJ")

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 8), and the Order of Reference was entered on November 13, 2008 (Doc. No. 9).

held a hearing on June 19, 2007, which was continued to January 22, 2008 so that the testimony of an internist and a clinical psychologist could be obtained. Tr. at 696-97. After the January 22, 2008 hearing, the ALJ found Plaintiff was not disabled in a decision issued on April 15, 2008. Tr. at 13-27. On July 7, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On August 26, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff argues the ALJ erred "by not fully and fairly evaluating the medical evidence in the file." Pl.'s Mem. at 12 (capitalization omitted). In particular, Plaintiff contends that the ALJ improperly discredited the opinions of certain physicians, and that the ALJ failed to apply the correct standard when evaluating Plaintiff's complaints of pain. Id. at 12-17. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's decision is supported by substantial evidence. The ALJ articulated adequate reasons supported by substantial evidence for discounting the opinions of the physicians, and the ALJ considered Plaintiff's complaints of pain in accordance with the proper standard. Therefore, the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: 1) is currently employed; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the regulations; 4) can

perform past relevant work; and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since November 1, 2004 (the alleged onset date). Tr. at 15. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "hypertension; minimal coronary artery disease ('CAD'); gastroesophageal reflux disease ('GERD'); fibromyalgia syndrome vs. myofascial pain syndrome; non-insulin dependent diabetes mellitus ('NIDDM'); history of ulnar nerve neuropathy and mild degenerative joint disease of the cervical and lumber spine." Tr. at 15. At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 18.

The ALJ determined Plaintiff has the residual functional capacity ("RFC") for a limited range of light work: Plaintiff can sit for six hours and stand and walk for six hours in an eight-hour day; Plaintiff can lift and carry fifteen pounds occasionally and ten pounds or less frequently; Plaintiff can bend, kneel, balance, and climb stairs occasionally; Plaintiff needs to work in a controlled setting without exposure to pulmonary irritants; Plaintiff has no limitations with manipulation, communication, or pushing and pulling. Tr. at 18-19. At step four, the ALJ observed that Plaintiff is capable of performing her past relevant work as a "Proof Machine Operator." Tr. at 24. At step five, the ALJ determined there are also other jobs that exist in significant number in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC. Tr. at 24-26. The ALJ

concluded Plaintiff was not under a disability[2] from November 1, 2004 (the alleged onset date) through the date of the decision. Tr. at 27.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

### A. Opinions of Treating Physicians

Plaintiff contends the ALJ gave insufficient weight to the opinions of John E. Monnier, M.D. ("Dr. Monnier") and Carlos Torrellas, M.D. ("Dr. Torrellas"), two of Plaintiff's treating physicians. The Social Security Regulations instruct ALJs how to weigh the medical opinions[3] of treating physicians[4] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability

---

[3] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[4] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required the for the medical condition. See 20 C.F.R. § 404.1502.

of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

### 1. Opinions of Dr. Monnier

Plaintiff contends the ALJ gave insufficient weight to the medical opinions of Dr. Monnier, Plaintiff's primary care physician. Pl.'s Mem. at 10-12, 14-18. Dr. Monnier treated Plaintiff for approximately seven years. Tr. at 497.[5] Plaintiff testified Dr. Monnier oversaw her medical treatment, and she saw him approximately three times per year to manage her diabetes. Tr. at 679, 683. Although Dr. Monnier completed three different forms in relation

---

[5] At the June 19, 2007 hearing, Plaintiff testified that she had been seeing Dr. Monnier for approximately six years. Tr. at 679.

to Plaintiff's physical condition, Tr. at 304-08, 309-10, 497-501, he stated in an April 5, 2005 letter that he would "defer to a disability specialist regarding disability determinations." Tr. at 205.

On February 15, 2005, Dr. Monnier completed a Fibromyalgia Questionnaire for MetLife, Plaintiff's insurer. Tr. at 309-10. Dr. Monnier opined that Plaintiff suffered from fibromylagia with the following associated symptoms: poor sleep; poor exercise tolerance; headaches; parasthesias; "sensations of swelling without true joint swelling"; irritable bowel syndrome; poor tolerance for cold; depressed mood; and stress or anxiety type disorder. Tr. at 309. Dr. Monnier stated that Reza M. Taba, M.D. ("Dr. Taba"), Plaintiff's rheumatologist, had opined Plaintiff was doing "poorly." Tr. at 310.

On June 15, 2007, Dr. Monnier completed a Physical Residual Functional Capacity Questionnaire. Tr. at 497-501. In the Physical Residual Functional Capacity Questionnaire, Dr. Monnier stated that Plaintiff suffered from fibromyalgia, depression, hypertension, and diabetes, with symptoms of fatigue, diffuse muscular pain, and joint pain. Tr. at 497. It was noted that Plaintiff's pain would interfere with her attention and concentration frequently. Tr. at 498. According to Dr. Monnier, Plaintiff could walk less than one city block without rest or severe pain. Tr. at 498. Dr. Monnier indicated Plaintiff would need unscheduled ten- to fifteen-minute breaks every two hours. Tr. at 499. Although Dr. Monnier opined Plaintiff could sit for only thirty minutes at a time before needing to get up, and Plaintiff could stand for only ten minutes at a time before needing to sit down, Dr. Monnier did not believe Plaintiff needed a job that permitted shifting positions at will from sitting to standing or walking. Tr. at 498-99. Dr. Monnier stated Plaintiff's legs did not need to be elevated with prolonged

sitting, but she did need to use a cane or other assistive device. Tr. at 499. With respect to lifting and carrying, Dr. Monnier indicated Plaintiff could frequently lift less than ten pounds; Plaintiff could occasionally lift ten pounds; Plaintiff could rarely lift twenty pounds; and Plaintiff could never lift fifty pounds. Tr. at 500. Dr. Monnier stated Plaintiff could twist occasionally; Plaintiff could stoop, crouch, squat, and climb stairs rarely; and Plaintiff could never climb ladders. Tr. at 500-01. Plaintiff could spend only five percent of the day grasping, turning, or twisting objects; five percent of the day engaging in fine manipulations of the fingers; and five percent of the day reaching. Tr. at 501. Dr. Monnier indicated Plaintiff would probably be absent from work more than four days per month. Tr. at 501.

In an April 5, 2008 Treating Physician's Medical Assessment of Ability to Do Work-Related Activities (Physical), Dr. Monnier opined, among other things, that Plaintiff's fibromyalgia and fatigue resulted in the following functional limitations: Plaintiff could not lift and/or carry more than five to ten pounds; Plaintiff could stand and walk only one to two hours in an eight-hour day, and she could stand and walk thirty minutes to one hour without interruption; Plaintiff could sit only one to two hours in an eight-hour day, and she could sit thirty minutes to one hour without interruption; Plaintiff could occasionally climb, balance, stoop, crouch, kneel, and crawl; reaching, handling, and pushing/pulling caused "excess fatigue"; working at a computer caused Plaintiff pain; and Plaintiff needed fifteen- to thirty-minute rest periods every one to two hours. Tr. at 304-08. Dr. Monnier qualified this opinion by stating that "these are estimates only." Tr. at 304.

The ALJ articulated the following reasons for discounting Dr. Monnier's medical opinions: his opinions are not well-supported by medically acceptable clinical and laboratory

diagnostic techniques; there is no evidence that Dr. Monnier actually treated Plaintiff for the conditions he claimed were limiting her; his opinions are inconsistent with the reports of other sources who examined Plaintiff; his opinions are contradicted by other evidence of record; and his opinions are unsupported by objective medical evidence and are wholly conclusory. Tr. at 21.

The opinions of Dr. Monnier that are at issue, discussed supra pp. 6-8, were submitted on forms that elicited conclusory responses. Tr. at 304-08, 309-10, 497-501. As the ALJ pointed out, Dr. Monnier's February 15, 2005 treatment notes state that Plaintiff was "only there to have papers filled out," and the June 6, 2007 treatment notes state that Plaintiff needed to update paperwork for a disability hearing. Tr. at 22 (referring to Tr. at 562, 576). The ALJ explained that "Dr. Monnier's assessment is inconsistent with the fact that other treating and examining sources have been unable to identify any clinical abnormalities." Tr. at 22. The ALJ indicated Dr. Monnier's opinions are inconsistent with the treatment notes of William H. Noran ("Dr. Noran"), who reported that Plaintiff's strength was normal and that Plaintiff's gait and station were normal. Tr. at 22 (referring to Tr. at 298-99).

The ALJ observed that Dr. Monnier's opinions are inconsistent with the opinion of Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock"), an examining physician. Tr. at 22. The ALJ noted that Dr. Harper-Nimock reported Plaintiff had no motor or sensory deficits, no muscle atrophy, and her upper extremity and grip strength was "5+/5+." Tr. at 22 (referring to Tr. at 266). The ALJ emphasized that Dr. Harper-Nimock found Plaintiff had only "moderate" limitations. Tr. at 20 (referring to Tr. at 267). As the ALJ indicated, Dr. Harper-Nimock noted that although Plaintiff was using a cane for balance and to assist with pain when she arrived

for the June 1, 2005 examination, the cane had not been prescribed by a doctor.[6]  Tr. at 24 (referring to Tr. at 265).

The undersigned recognizes that fibromyalgia often lacks medical or laboratory signs, and therefore a lack of objective evidence should not be the sole basis for discounting a treating physician's opinion as to fibromyalgia. See Moore v. Barnhart, 405 F.3d 1208, 1211-12 (11th Cir. 2005).  However, the ALJ discounted Dr. Monnier's opinion for reasons in addition to those stated supra pp. 8-9.  Tr. at 22-23.  The ALJ emphasized that Dr. Monnier's opinion is inconsistent with the opinion of Dr. Taba.  Tr. at 22-23.  As the ALJ recognized, Dr. Monnier did not treat Plaintiff for fibromyalgia–Dr. Taba did.  Tr. 21-24 (referring to Tr. at 191-203, 300-02, 314-40, 636-40, 645-58).  Although Plaintiff asserts Dr. Taba's treatment notes suggest Plaintiff's condition fluctuated, Pl.'s Mem. at 13, substantial evidence supports the ALJ's finding that Dr. Taba's treatment notes show Plaintiff suffered from some pain, but not disabling pain.  Tr. at 23-24 (referring to Tr. at 196-97, 301, 316, 639, 641, 656).  In contrast to Dr. Monnier's opinion of severe physical limitations, the ALJ noted that Dr. Taba consistently recommended that Plaintiff exercise.  Tr. at 22 (referring to Tr. at 302, 318, 320). A review of Dr. Taba's treatment notes reveals Plaintiff reported she was able to exercise. Tr. at 301.

---

[6] The ALJ found Dr. Harper-Nimock's notes do not establish that a hand-held assistive device was medically required. Tr. at 24 (citing Social Security Rule ("SSR") 96-9p, 1996 WL 374185). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive to aid in walking or standing, and describing the circumstances for which it is needed . . . ." SSR 96-9p at *7. Contrary to Plaintiff's argument, Pl.'s Mem. at 16-17, there is no such documentation from Dr. Harper-Nimock or Dr. Taba, although Dr. Harper-Nimock did state that the cane was "medically necessary." Tr. at 265. Substantial evidence supports the ALJ's conclusion that the record does not establish that a hand-held assistive device was "medically required." Even if a hand-held assistive device were medically required by Plaintiff, nothing suggests it would change the ALJ's conclusion as to Plaintiff's RFC.

The ALJ observed Dr. Monnier's statement that Dr. Taba reported Plaintiff was doing "poorly" is contradicted by Dr. Taba's subsequent treatment notes, which indicate Plaintiff was "feeling better" and "doing fairly well." Tr. at 22 (referring to Tr. at 196-97, 301, 316, 639, 641, 656). Plaintiff argues that Dr. Taba's refusal to fill out "disability forms" should not necessarily lead to an inference that Dr. Taba believed Plaintiff could engage in substantial gainful activity. Pl.'s Mem. at 15. However, the absence of such forms from Dr. Taba certainly does not weigh in favor of a finding of disability,[7] especially when his treatment notes suggest Plaintiff is not disabled.

A thorough review of the entire record reveals the ALJ articulated adequate reasons for discounting Dr. Monnier's opinions. The ALJ explained that Dr. Monnier did not treat Plaintiff for fibromyalgia; Dr. Monnier's opinions are not supported by objective medical evidence; his opinions are inconsistent with the reports of Dr. Taba; and his opinions are conclusory. Tr. at 21-24. These reasons are supported by substantial evidence.

### 2. Opinion of Dr. Torrellas

Plaintiff argues the ALJ wrongly rejected the opinion of Dr. Torrellas, who treated Plaintiff for depression. Pl.'s Mem. at 16. Plaintiff's argument in this regard is puzzling because the ALJ did not discount Dr. Torrellas's opinion. Tr. at 17-18. In fact, Dr. Torrellas's treatment notes do not support a finding of disability. Nevertheless, because Plaintiff appears to challenge the manner in which the ALJ considered Dr. Torrellas's opinion, a review Dr. Torrellas's opinion is appropriate.

---

[7] The burden is on the claimant to prove disability. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); Phillips, 357 F.3d at 1241 n.10 (noting that the burden shifts to the Commissioner at the fifth step of the sequential evaluation process).

As the ALJ observed, Dr. Torrellas's March 17, 2005 psychiatric evaluation reveals that Plaintiff was alert, fully oriented, and cooperative. Tr. at 17 (referring to Tr. at 272). The ALJ stated Dr. Torrellas's evaluation shows Plaintiff's "thought processes were goal- directed and well organized and her concentration and memory were intact." Tr. at 17 (referring to Tr. at 272). A review of Dr. Torrellas's evaluation reveals that at the time of the evaluation Plaintiff had an "appropriate flow of ideas and good quality of associations"; her speech was "clear, coherent and not pressured"; and she was not delusional or experiencing distortions or feelings of depersonalization. Tr. at 272. The undersigned notes that Dr. Torrellas assigned Plaintiff a Global Assessment of Function ("GAF")[8] score of sixty to sixty-five. Tr. at 273. Although "the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs," Wind v. Barnhart, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (internal quotation and citation omitted), a GAF score in the range of sixty to sixty-five represents only mild to moderate symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 34. In its entirety, Dr. Torrellas's March 17, 2005 evaluation indicates Plaintiff was not suffering from a disabling mental impairment as of the date of the evaluation.

In addition, the ALJ observed that the most recent treatment notes of Dr. Torrellas's assistant, Donna Sponzo, MS, ARNP ("Ms. Sponzo"), state that Plaintiff was "doing well on meds" as of January 23, 2008. Tr. at 17 (quoting Tr. at 647). A review of Ms. Sponzo's progress notes reveals that on February 7, 2007, Plaintiff denied feeling depressed or

---

[8] "The [GAF] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations." Mathis v. Astrue, No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *7, n. 4 (M.D. Fla. Mar. 27, 2008) (unpublished) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 32).

anxious, and Plaintiff was sleeping well. Tr. at 520. On April 6, 2007, Plaintiff was feeling "'a little depressed.'" Tr. at 520 (quoting Plaintiff). On July 31, 2007, Plaintiff was "'a little down.'" Tr. at 651 (quoting Plaintiff). On January 23, 2008, Ms. Sponzo reported that Plaintiff's mood and affect were "remain[ing] level," although Plaintiff's "sleeping patterns [were] not consistent." Tr. at 647.

The record shows that the ALJ did not discount Dr. Torrellas's opinion, and in any event the evaluation and treatment notes of Dr. Torrellas and Ms. Sponzo do not support a finding of disability. Substantial evidence supports the ALJ's decision with respect to Dr. Torrellas's opinion.

For the reasons stated, and after a thorough review of the entire record, the ALJ articulated adequate reasons supported by substantial evidence for discounting the opinion of Dr. Monnier, and the ALJ's findings with respect to Dr. Torrellas are supported by substantial evidence.

### B. Opinion of Nonexamining Physician

Plaintiff appears to contend that the opinion of Laurie Hamilton, M.D. ("Dr. Hamilton") as to Plaintiff's mental impairments should have been given more weight. Tr. at 16. Dr. Hamilton, a nonexamining physician, testified at the January 22, 2008 hearing that Plaintiff has "marked" limitations in concentration, persistence, or pace. Tr. at 715, 724. The ALJ did not accept Dr. Hamilton's opinion in this regard. Tr. at 18. A review of Dr. Hamilton's testimony reveals that she was quite equivocal in her opinion. Tr. at 709-28. Dr. Hamilton testified that Plaintiff's claims of "experiencing real interference in her concentration and pace," is "generally speaking, with fibromyalgia patients, marked or extreme." Tr. at 715.

However, upon questioning from the ALJ, Dr. Hamilton acknowledged there is no objective evidence of such limitations. Tr. at 715-17, 724. Dr. Hamilton agreed that Plaintiff's ability to pay bills, drive, and go shopping indicates Plaintiff has "some modicum of attention and concentration." Tr. at 719.

Generally, a nonexamining physician's opinion is given less weight than that of a treating or examining physician. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Nonetheless, every medical opinion should be considered in making the disability determination. 20 C.F.R. §§ 404.1527, 416.927. The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)).

To the extent Dr. Hamilton's testimony at the January 22, 2008 hearing suggests disability, Tr. at 705-28, the ALJ found it to be uncorroborated by the medical record or Plaintiff's testimony. Tr. at 17. As the ALJ observed, Plaintiff testified at the June 19, 2007 hearing that she is able to write a simple note, make a grocery list, do simple mathematical computations, and drive. Tr. at 17 (referring to Tr. at 664-65). The ALJ recognized that Plaintiff is also able to pay bills. Tr. at 17 (referring to Tr. at 225, 247, 260). The ability to

perform these functions suggests Plaintiff has less than marked limitations in the areas of attention, concentration, persistence, and pace.

In response to the ALJ's questions during the January 22, 2008 hearing, Dr. Hamilton acknowledged there is no objective medical evidence or clinical findings to substantiate Plaintiff's self reports of marked limitations in the areas of attention, concentration, persistence, and pace. Tr. at 715-17, 724. Moreover, the ALJ noted that Dr. Hamilton did not examine Plaintiff, and her opinion of marked limitations in this area is inconsistent with the findings from Dr. Torrellas's March 17, 2005 psychiatric evaluation. Tr. at 17-18 (referring to Tr. at 272-73). A thorough review of the entire record reveals that the ALJ's findings with respect to Dr. Hamilton are supported by substantial evidence.

### C. Plaintiff's Subjective Complaints of Pain

Plaintiff argues the ALJ "simply discounted" Plaintiff's pain. Pl.'s Mem at 12. "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). If it is determined that a claimant has a medical condition that could reasonably give rise to the pain alleged, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote, 67 F.3d at 1561.

"The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223; Foote, 67 F.3d at 1561. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). When considering the claimant's pain testimony, the Regulations provide that the following factors should be considered: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate pain or other symptoms; and (7) the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." Tr. at 22. Rather than "simply discounting" Plaintiff's complaints of pain, Pl.'s Mem. at 12, the ALJ articulated convincing reasons for discrediting Plaintiff's pain testimony. Tr. at 22-23.

The ALJ explained that Plaintiff's medical history is inconsistent with her allegations as to the disabling effects of her pain. Tr. at 22. The ALJ observed that Plaintiff testified she left her job on November 1, 2004 because she was not able to "keep up" with her work. Tr. at 22 (referring to Tr. at 674-75). However, the ALJ noted that Plaintiff was never asked to leave her job due to unsatisfactory performance. Tr. at 22 (referring to Tr. at 687). The ALJ pointed out that Plaintiff stopped working after a November 1, 2004 hospitalization. Tr. at 22. On November 1, 2004, Plaintiff was admitted to Memorial Hospital with complaints of chest pain; nausea and vomiting; dizziness; history of hypertension; and non-insulin dependent diabetes. Tr. at 185. Cardiac catheterization was performed. Tr. at 185. The discharge summary showed Plaintiff had experienced "[c]hest pain, probably noncardiac," and she had thirty-five percent "coronary artery disease of the circumflex artery, status post cardiac catheterization." Tr. at 185. The ALJ noted that, although Plaintiff was cleared for discharge without any work restrictions, Plaintiff "made no effort to return to work." Tr. at 22 (referring to Tr. at 186).

The ALJ explained that Plaintiff's complaints of back pain are not corroborated by diagnostic test results. Tr. at 22-23. The ALJ noted that MRIs in 2002 showed only "'minimal [marginal] osteophyte formation'" and were otherwise unremarkable. Tr. at 22 (quoting Tr. at 201-03). The ALJ also noted that an MRI in 2005 revealed only mild disc degeneration with no evidence of herniation, cord abnormality, or sublixation. Tr. at 22-23 (referring to Tr. at 466, 481).

Fibromyalgia often lacks medical or laboratory signs, and therefore a lack of objective evidence should not be the sole basis for discounting a claimant's complaints of pain when

-17-

those complaints are related to fibromyalgia. See supra p. 9 ; Moore, 405 F.3d at 1211-12. Here, however, the ALJ identified other reasons for discrediting Plaintiff's testimony. For example, the ALJ explained that Plaintiff's pain testimony is inconsistent with Dr. Taba's treatment records. Tr. at 23-24. Plaintiff testified that she sits in a recliner with her legs elevated for a majority of the day. Tr. at 770. The ALJ found that "[t]here is no documentation of any medical source advising [Plaintiff] that she was restricted to doing nothing but sitting in a recliner[,] and there is no documentation of any medical source advising [Plaintiff] that any credible medical condition would be exacerbated unless she did nothing but sit in a recliner all day." Tr. at 23. This observation is supported by substantial evidence, as Dr. Monnier opined on June 15, 2007 that Plaintiff's legs did not need to be elevated with prolonged sitting. Tr. at 499. Indeed, as the ALJ recognized, Dr. Taba, who treated Plaintiff for fibromyalgia, directed Plaintiff to exercise and lose weight. Tr. at 23 (referring to Tr. at 302, 318, 320). The ALJ indicated that Dr. Taba's instructions to exercise are inconsistent with Plaintiff's alleged limitations. Tr. at 23. In fact, a review of Dr. Taba's treatment notes reveals that on March 2, 2006 Plaintiff reported she was able to exercise. Tr. at 301. As the ALJ noted, Plaintiff apparently did not follow Dr. Taba's advice, as she weighed 180 pounds on October 7, 2004, and she weighed 202 pounds on January 31, 2007. Tr. at 23 (referring to Tr. at 155, 502).

In addition, the ALJ observed that although Plaintiff at times reported she was doing "poorly," Dr. Taba reported on many occasions that Plaintiff appeared to be in only "mild" or "moderate" pain, and that Plaintiff was doing "fairly well." Tr. at 23-24 (referring to Tr. at 301, 316-17, 320, 639-40, 655-56). The ALJ noted that Dr. Taba did not complete any physical

assessment forms or opine as to Plaintiff's functional capacity; however, his treatment notes and observations are inconsistent with Plaintiff's statements as to the intensity, persistence, and functionally limiting effects of her pain. Tr. at 20, 23-24 (referring to Tr. at 301, 316-17, 320, 639-40, 655-56). The undersigned notes Dr. Taba's reports that Plaintiff was doing well are corroborated by the September 17, 2007 treatment notes of Joseph A. Moore, M.D., Plaintiff's cardiologist, who noted Plaintiff reported she "generally feels well." Tr. at 641.

After thoroughly reviewing the entire record, the undersigned concludes the ALJ applied the pain standard properly. The ALJ found there is nothing in the record that substantiates the extreme restriction of daily activities that Plaintiff alleges, and the notes from Plaintiff's physicians and other evidence of record do not indicate Plaintiff's pain is disabling. The ALJ's reasons for discrediting Plaintiff's pain testimony are supported by substantial evidence.

## V. Conclusion

The ALJ analyzed the opinions of Plaintiff's physicians properly, and his decision with respect to Plaintiff's physicians is supported by substantial evidence. In addition, the ALJ applied the Eleventh Circuit pain standard properly and articulated reasons supported by substantial evidence for discrediting Plaintiff's pain testimony. In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 23, 2009.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jdf
Copies to:
Counsel of Record